IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| COREY TAYLOR, #534419, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:24-cv-00005 ) Judge Trauger |
| BRANDON PEONE, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Corey Taylor, a state inmate confined at the Turney Center Industrial Complex (TCIX), has filed a pro se civil rights Complaint under 42 U.S.C. § 1983. (Doc. No. 1.) On May 8, 2024, the court granted the plaintiff's pauper application and assessed the filing fee against his inmate trust account. (Doc. No. 15.) The court denied the plaintiff's requests for emergency injunctive relief. (*See* Doc. Nos. 6, 19, 24.) The plaintiff appealed the denial of emergency relief to the U.S. Court of Appeals for the Sixth Circuit.

On October 22, 2024, the Sixth Circuit vacated the denial of emergency injunctive relief and remanded for further proceedings. (Doc. No. 25.) On November 7, 2024, the case was reassigned to the docket of the undersigned District Judge. (Doc. No. 27.)

The case is before the court for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), and for consideration of whether preliminary injunctive relief is warranted in light of the Sixth Circuit's remand order.

**I. INITIAL REVIEW**

**A. Legal Standard**

In cases filed by prisoners, the court must conduct an initial screening and dismiss the

Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

The plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

2

**B. Facts**

The Complaint alleges that, on December 6, 2023, the plaintiff was stopped on his way to the dinner line by the defendant, CERT Officer Brandon Peone, who questioned him about his "black & gray Muslim kufi which is worn as a head covering." (Doc. No. 1 at 1.) The plaintiff alleges that Peone "acted in a threatening manner stating how policy states that solid colors bl[ac]k, gray or white are [the] only [ones] permitted," and the plaintiff agreed that "policy does state that." (*Id.*) However, he objected to Peone that he had worn his black and gray kufi "for a couple of months just as other Muslim inmates ha[d] worn multi-colored kufis" without being harassed, to which Peone responded that he (Peone) "is only enforcing policy." (*Id.* at 1–2.) When the plaintiff objected based on other TCIX staff's silence with regard to the color of his kufi, Peone replied "they don't notice small things like [he does]." (*Id.*)

At that point, the plaintiff stated to Peone that he felt "harassed and discriminated against due to the major issue right now with Muslims and based on the color of my skin." (*Id.*) Peone responded by saying that the plaintiff was "not on [his] radar" and that he had "no reason to harass" the plaintiff, but asked the plaintiff if he would "like to know how to spell my name correctly"—when filing a grievance, presumably. (*Id.*) The plaintiff next reports that, "[b]eing in fear of my safety due to the encounter I asked was there anything else and [Peone] asked what unit was I assigned to[,] I asked why and he stated he'll handle the matter." (*Id.*) The plaintiff filed a Title VI discrimination complaint[1] against Peone that same day. (*See Taylor v. Iadicicco, et al.*, No. 1:24-cv-00004, Doc. No. 3, Motion for Restraining Order or TRO, at 1 (alleging retaliation "due to

---

[1] Under Tennessee Department of Correction policies, Title VI complaints may be filed by inmates who claim to be victims of "racial, color, or national origin discrimination." *Perkins v. S.C.C.F. Core Civic*, No. 3:22-CV-00005, 2023 WL 4748238, at *8 (M.D. Tenn. July 24, 2023), *adopted*, 2023 WL 5917398 (M.D. Tenn. Sept. 11, 2023).

3

[plaintiff] filing a Title VI discrimination complaint against Cert Officer Brandon Peone on 12/6/23").)[2]

The next day, December 7, 2023, Peone came into the plaintiff's unit and spoke to another Muslim inmate, an imam, to whom Peone "expressed how he had a[n] issue with [the plaintiff] and stated [the plaintiff is] now on his radar and he threatened to lock [the plaintiff] up" in segregation. (Doc. No. 1 at 2.) When he learned of the threat, the plaintiff immediately reported it to "the grievance officer and the Housing Sergeant Avery," who told the plaintiff to "stay out of Peone's way [be]cause he's targeting [the plaintiff] for some unknown reason." (*Id.*)

A month later, on January 3, 2024, Peone passed the plaintiff in the hall and asked him, "Didn't we have an issue with this kufi?" (*Id.*) The plaintiff responded, "No we didn't[,] you did." (*Id.*) Peone asked if the plaintiff had filed a Title VI complaint, and when the plaintiff responded in the affirmative, Peone said, "Don't worry I'll take care of it." (*Id.*) This response caused the plaintiff to fear for his safety and wellbeing, and he filed a retaliation grievance against Peone "due to being already engaged in protected conduct" which caused Peone to take adverse action twice, "first by threats to lock [the plaintiff] up as he talked to the imam [and] then again on 1/3/24" when he told the plaintiff that he would "take care of it," "which [the plaintiff] perceived as a threat." (*Id.*) The plaintiff alleges that these two adverse actions "were fully motivated" by his "actions of being engaged in . . . protected conduct." (*Id.* at 2–3.)

---

[2] The Complaint in this case first refers to the plaintiff's Title VI grievance in the context of a January 2024 discussion with Peone, without specifying when that grievance was filed. (Doc. No. 1 at 2.) Given the importance of such a filing in the retaliation context, the court takes judicial notice of the plaintiff's pleading in another case in this district, filed on the same day as the instant case, which establishes its filing date. "It is well established that a court can take judicial notice of its own files and records under Rule 201 of the Federal Rules of Evidence." *ZMC Pharmacy, LLC v. State Farm Mut. Auto. Ins. Co.*, 307 F. Supp. 3d 661, 665 n.1 (E.D. Mich. 2018) (quoting *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015); citing *Woods v. Northport Public School*, 487 F. App'x 968, 973 (6th Cir. 2012)).

Two hours after his January 3 encounter with Peone, the plaintiff was charged by Peone's "close employee[,] Brandon Iadicicco," with "solicitation to staff which is a Class A and carries possible outside prosecution." (*Id.* at 3.) The plaintiff claims that this is a "bogus disciplinary charge" that must be linked to his dispute with Peone because he did not have any previous issue with Officer Iadicicco. (*Id.*) The plaintiff claims that Peone treated him differently than other Muslim inmates, whom he did not harass about the color of their kufis. (*Id.*)

## C. Discussion

The plaintiff claims that Peone violated his rights to the free exercise of his religion and to free "speech & conduct." (Doc. No. 1 at 1.) He further claims that Peone is retaliating against him for pursuing those rights, and in particular for seeking to vindicate them by way of a Title VI complaint, which the plaintiff "appealed . . . on 1/3/2024 when Brandon Peone acted in . . . retaliation against Plaintiff." (*Id.*)

The plaintiff's freedoms of speech and conduct are subject to restrictions consistent with the fact of his incarceration. It is clear that "[p]rison officials may legitimately punish inmates who verbally confront institutional authority without running afoul of the First Amendment," *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004), and that prisons may restrict religious clothing as long as the restriction is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The gravamen of the Complaint in this case is its assertion (1) that Peone burdened the plaintiff's exercise of his religion, in violation of the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA), by harassing him for wearing a kufi that did not comply with prison policy, and (2) that Peone retaliated against the plaintiff, in violation of the First Amendment, because of the

5

plaintiff's noncompliance with the kufi policy and his pursuit of a Title VI complaint against Peone. These claims are further analyzed below.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). Violations of this protection are often alleged in the context of a prison policy or regulation that restricts or conflicts with particular religious exercises or requirements, in which case the offending policy or regulation is valid if it passes muster under *Turner v. Safley*, *supra*. Here, however, the Complaint does not explicitly claim that the prison policy requiring solid color kufis imposes an unconstitutional burden upon the exercise of the plaintiff's Muslim faith. Rather, it challenges Peone's selective enforcement of that policy against the plaintiff, while other Muslim inmates are allowed to violate the policy by wearing multi-colored kufis. (*See* Doc. No. 1 at 3 (alleging that plaintiff was "treated differently from other inmates who[] are Muslim").) Such a claim involving allegations of discrimination resulting from "the disparate application of a prison policy to two inmates belonging to the same religious group" requires the claimant to establish that the policy was applied to him in a way that was not reasonably related to legitimate penological interests. *Hayes v. Tennessee*, 424 F. App'x 546, 551–54 (6th Cir. 2011) (finding summary dismissal of free exercise claim appropriate "unless Hayes raises a genuine issue whether Defendants' application of the policy to his circumstances was not reasonably related to [legitimate penological] interests"); *see also Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001) ("In considering a challenge to a prison policy as applied, the proper inquiry is whether the actions of the prison officials are reasonably related to legitimate penological interests.") (quoting *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 103 (6th Cir. 1991)).

The Complaint in this case does not contain any such allegation. Notably, it does not allege that Peone confiscated the plaintiff's kufi or punished him for wearing it, other than by scrutinizing his compliance with the policy in a way that made the plaintiff feel harassed. But such harassment is not in these circumstances unconstitutional, *see Thomas v. Maguinuss*, No. 4:24-CV-15-DCLC-CHS, 2024 WL 924191, at *5 (E.D. Tenn. Mar. 4, 2024) (finding on initial review that inmate's "claim of harassment is not cognizable in a § 1983 action," and that he "does not otherwise allege that his kufi was confiscated or that he is prohibited from wearing his kufi" at the jail) (citing cases), nor did it in fact deter the plaintiff from wearing the kufi; the Complaint makes clear that the plaintiff continued to wear his black and gray kufi a month after it first sparked the conflict with Peone. (Doc. No. 1 at 2.) While the plaintiff essentially claims that he was "treated unfairly as an individual by [Peone's] actions" in admonishing him, but not other inmates, for noncompliance with the kufi policy, *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999), such differential treatment is not unconstitutional as a matter of equal protection, *id.*, nor is it alone sufficient to support a reasonable inference that the plaintiff's First Amendment free exercise rights have been violated.

As for the RLUIPA claim, the plaintiff has sued Peone in his individual capacity for damages resulting from his personal infliction of emotional distress upon the plaintiff. (Doc. No. 1 at 1, 3–4.) He therefore fails to state a plausible claim under RLUIPA, which allows "appropriate relief against a [state or local] government" but "does not authorize monetary judgments against officials in their individual capacities." *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 460 (6th Cir. 2019) (citing 42 U.S.C. § 2000cc-2(a) and *Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014)).

In sum, the court finds that the Complaint in its current form fails plausibly to claim entitlement to relief for any violation of the plaintiff's religious freedoms. The plaintiff may seek to file an amended complaint pursuant to Federal Rule of Civil Procedure 15 in order to restate these claims, if appropriate.

Unlike his religious freedom claims, the plaintiff's First Amendment retaliation claim is plausibly pled. A First Amendment retaliation claim requires a prisoner to allege "that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)).

The filing of a nonfrivolous grievance against a prison official, such as the plaintiff's Title VI complaint against Peone, is protected conduct. *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).[3] The plaintiff also adequately alleges, for purposes of initial review, that the adverse action taken against him—the filing of a Class A disciplinary charge shortly after Peone confronted him about his pending Title VI grievance—was sufficiently severe to deter a person of ordinary firmness from continuing to oppose Peone. Finally, the plaintiff plausibly alleges at this early stage that the adverse action was motivated by his Title VI proceedings against Peone, as it was initiated within hours of a discussion

---

[3] It does not appear that the plaintiff's persistence in wearing a kufi that he admits did not comply with a prison policy—the legitimacy of which he has not at this point challenged—amounts to protected conduct for purposes of First Amendment retaliation. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (concluding that "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct'"). The Complaint does not indicate whether or not the plaintiff possessed other kufis that were compliant with the policy, though in his most recent filing, the plaintiff indicates that he owns a "Gold colored kufi" in addition to his black-and-gray one. (Doc. No. 28 at 4.)

8

of those ongoing proceedings, by an officer close to Peone. The plaintiff's retaliation claim will be allowed to proceed for further development.

## II. PRELIMINARY INJUNCTIVE RELIEF

As described in the Sixth Circuit's remand order, the plaintiff "d[oes] not ask for an injunction that [i]s short in duration and would merely preserve the status quo," as a TRO would, but instead effectively seeks a preliminary injunction "to prevent what he alleged were serious, perhaps irreparable consequences." (Doc. No. 25 at 4–5.) Four factors are to be balanced when considering a motion for preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014).

As the Sixth Circuit pointed out in its remand order, any loss of First Amendment freedoms constitutes irreparable injury. (Doc. No. 25 at 6 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).) Accordingly, the propriety of a preliminary injunction in cases where such constitutional violations are alleged "often turns on the likelihood of success on the merits." (*Id.* at 5–6 (citing *Schimmel, supra*).). Based on the Complaint reviewed in this opinion, the plaintiff has no likelihood of success on the merits of his free-exercise claim, which cannot proceed as pled. Moreover, at this stage, the court cannot find that the plaintiff has the requisite "strong likelihood" of success on the merits of his First Amendment retaliation claim, or that he faces irreparable injury from the threats he claims to be retaliatory.

The plaintiff's retaliation claim, as pled in his Complaint and reviewed above, hinges on an adverse action—the filing of a disciplinary charge—that was not undertaken by Peone, the only

9

defendant to this action. Although the court has inferred, for purposes of initial review, that the disciplinary charge was related to the plaintiff's Title VI complaint against Peone, it cannot be said at this early stage that the plaintiff is strongly likely to succeed in demonstrating Peone's liability based on the disciplinary charge filed by Officer Iadicicco. Otherwise, the plaintiff's retaliation claim against Peone is based on allegations of harassment and threats to file disciplinary charges.

In his post-remand Motion for Leave to File Affidavit Due to Continuous Unconstitutional Acts (Doc. No. 28), the plaintiff asks the court to issue an order of protection "so that I can go about my normal prison activities without being harassed, threatened, stalked, intimidated, targeted, nor retaliated against by defendant as I have been continuously." (*Id.* at 7.) In support of this request, the plaintiff alleges that Peone "has repeatedly questioned plaintiff about this on-going litigation and has been threatening plaintiff with disciplinary charges by telling plaintiff that if he does not do what he says that he can lock plaintiff up and charge him with disobeying a direct order." (*Id.* at 3.) Specifically, on October 18, 2024, Peone allegedly questioned the plaintiff about "the on-going civil actions" and about a "panel of people" before whom Peone was soon to appear. (*Id.* at 3–4.) On November 5, Peone noticed that the plaintiff was wearing a gold kufi and ordered him to remove it under threat of discipline for disobedience, stating that the plaintiff "cannot wear his Gold colored kufi and plaintiff knows that." (*Id.* at 4.) In response, the plaintiff told Peone "that he is exercising his freedom of religion and he is expressing his worship as he sees fit to the dictates of his consci[ence]," and that Peone "cannot control nor dictate his mode of worship." (*Id.*) After this interaction, the plaintiff "walked off," apparently without removing his kufi. (*Id.* at 5.) Then, on November 6, Peone confronted the plaintiff after finding him in "zone 1," an area where the plaintiff was not ordinarily authorized to be. (*Id.*) When the plaintiff told Peone that Officer Garret had given him permission to be in zone 1 to help another inmate with his property, and that "he

would not [have] been in zone 1 on his own," Peone threatened to "lock plaintiff up for out of place" if Peone found him in zone 1 again. (*Id.*) The plaintiff then accused Peone of harassment and the two exchanged words, after which the plaintiff reported Peone for harassment and filed an emergency grievance against him. (*Id.*) There is no indication that Peone has carried out any threats to discipline the plaintiff for disobedience.

The court, having considered the merits of the plaintiff's claims at this early stage, has determined that his claim for retaliation based on his Title VI filing will proceed for further development. At this point, the clear focus of the plaintiff's retaliation claim is Peone's actions in response to his Title VI complaint. The court does not find the Complaint's allegations sufficient to support a plausible claim that Peone retaliated against the plaintiff by questioning him about the color of his kufi on December 6, 2023 and January 3, 2024; such alleged verbal harassment does not indicate any deprivation of First Amendment rights, as a matter of either freedom to exercise religion or freedom from retaliation for engaging in protected conduct.

Several months after filing the Complaint, the plaintiff clarified that Peone had recently told him that he could wear his black and gray kufi in his housing unit but not "on the blacktop." (Doc. No. 12 at 2.) In his most recent filing, the plaintiff makes clear that when his conflict with Peone resurfaced in late 2024, it took the form of one instance of verbal harassment about a gold-colored kufi (Doc. No. 28 at 4) and "numerous occasions" when the plaintiff was ordered to "produce legal documents or disclose . . . information about [his] legal actions against [Peone]," "or be issued a disciplinary charge for disobeying a direct order." (Doc. No. 28-1 at 1–2.) But the plaintiff provides no further detail about these occasions, and the court cannot find from his general description of them that he is under threat of irreparable injury that must be addressed before the case proceeds to discovery.

11

Case 1:24-cv-00005   Document 30   Filed 12/30/24   Page 11 of 12 PageID #: 168

Accordingly, the plaintiff is not entitled to preliminary injunctive relief at this time. If future circumstances warrant the renewal of a request for such relief, the plaintiff may file an appropriate motion.

### III. CONCLUSION

As discussed above, the plaintiff has stated a nonfrivolous claim against the defendant. Accordingly, the Clerk is **INSTRUCTED** to send the plaintiff a service packet (blank summons and USM 285 form) for the defendant. The plaintiff **MUST** complete the service packet and return it to the Clerk's Office within **30 DAYS** of the date of this order. Upon return of the completed service packet, **PROCESS SHALL ISSUE**.

In light of the foregoing, the plaintiff's motion to serve process (Doc. No. 12) is **DENIED** as moot. His motion for leave to file affidavit (Doc. No. 28) is **GRANTED**.

The court's determination that the Complaint states a colorable claim for purposes of this initial screening does not preclude the court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge

12

Case 1:24-cv-00005   Document 30   Filed 12/30/24   Page 12 of 12 PageID #: 169